UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CLARK DAVID BRUMFIELD | CIVIL ACTION |
| VERSUS | NO. 19-10818 |
| KAMATH L. BURDE, MEGHANA HEMPHILL, AND JAMES RIVER INSURANCE COMPANY | SECTION "R"(1) |

# ORDER AND REASONS

Before the Court is plaintiff Clark David Brumfield's motion to remand to state court.[1] Because complete diversity does not exist, the Court grants the plaintiff's motion.

## I. BACKGROUND

On April 2, 2019, the plaintiff filed suit in Louisiana state court against defendants Burde Kamath,[2] Meghana Hemphill, and the James River Insurance Company ("James River"), for damages that the plaintiff allegedly suffered in a car collision. The plaintiff alleges that Burde Kamath

---

[1] R. Doc. 5-2.
[2] The complaint and subsequent filings incorrectly name one defendant "Kamath Burde" instead of his correct name "Burde Kamath." *See* R. Doc. 5-2 at 2. In this Order and Reasons, we use the defendant's correct name.

negligently drove into the plaintiff's car, causing the plaintiff substantial injury.[3] Kamath's car was owned by Hemphill.[4] As a result, plaintiff sued both Kamath and Hemphill. Brumfield also sued his own insurance company, James River, which is incorporated in Ohio and headquartered in Virginia.[5] Kamath's and Hemphill's primary insurers—Progressive and Geico—respectively, paid out their policy limits.[6] Brumfield signed a limited release with Kamath and Hemphill, settling his claims against them except to the extent necessary to pursue any claims against an excess insurer.[7]

On May 30, 2019, James River removed the suit to federal court.[8] While acknowledging that the plaintiff and defendants Kamath and Hemphill are all residents and domiciliaries of Louisiana, James River contended that this Court has diversity jurisdiction over the action because Kamath and Hemphill were improperly joined.[9] Specifically, James River argues that because the plaintiff entered a settlement with Kamath and

---

[3]   R. Doc. 1-2 at 1-2.
[4]   *Id.* at 2.
[5]   *See* R. Doc. 1 at 2; R. Doc. 1-2.
[6]   *See* R. Doc. 15-1 at 2; R. Doc. 15-2 at 4.
[7]   R. Doc. 15-1; R. Doc. 15-2.
[8]   R. Doc. 1.
[9]   *Id.* at 2-3.

Hemphill, plaintiff cannot state a viable cause of action against Kamath or Hemphill under Louisiana law, and they are therefore improperly joined.[10]

Shortly after the defendant's removal of this case, Kamath signed an affidavit in which he attested that he was insured by Allstate, and not only Progressive, at the time of the accident.[11] Brumfield subsequently amended his state court complaint to add Allstate as a defendant, although the state court was deprived of jurisdiction upon removal, rendering the amendment void.[12] On June 28, 2019, the plaintiff filed a motion to remand this matter to state court, arguing that this Court is without subject-matter jurisdiction because plaintiff still has a valid claim against Kamath, who resides in the same state as the plaintiff.[13] Brumfield contends he has such a claim because he signed only a limited release with the defendants and specifically reserved an action against an insured defendant to the extent necessary to assert claims against an excess insurer.[14]

---

10     *Id.* at 2-4.
11     R. Doc. 5-3.
12     R. Doc. 5-6.
13     R. Doc. 5-2.
14     *Id.* at 3-4.

## II. LEGAL STANDARD

The plaintiff's remand motion is governed by the standard for improper joinder, set forth below.

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). "The jurisdictional facts that support removal must be judged at the time of removal." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000). In assessing whether removal is appropriate, the Court is guided by the principle that removal statutes should be strictly construed because federal courts are courts of limited jurisdiction. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Accordingly, "[a]ny ambiguities are construed against removal." *Id.*

For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, and there must be complete diversity between plaintiffs and defendants. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). Here, the parties do not dispute that the amount-in-controversy requirement is satisfied. However, complete diversity is contested. Ordinarily, having a plaintiff and a defendant who reside in the

4

same state would destroy complete diversity. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). And when a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332. But a defendant may remove by showing that the nondiverse party was joined improperly. *Smallwood v. Ill. Cent. R.R. Co.*, 352 F.3d 220, 222-23 (5th Cir. 2003).

The burden of demonstrating improper joinder is a heavy one, as the doctrine is a narrow exception to the rule of complete diversity. *Smallwood*, 352 F.3d at 222. A defendant may establish improper joinder by showing either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 222-23. Here, there is no allegation that plaintiff fraudulently pleaded jurisdictional facts; accordingly, only the second prong of the improper joinder test is at issue. To determine whether the individual defendants were improperly joined under the second prong, the Court asks whether "there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.* at 223 (quoting *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993)) (internal quotation marks omitted).

"In analyzing whether a plaintiff has demonstrated a reasonable possibility of recovery, the district court may 'conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 69 (5th Cir. 2010) (per curiam) (quoting *Smallwood*, 385 F.3d at 573). The scope of the inquiry for improper joinder, however, is even broader than that for 12(b)(6) because the Court may "pierce the pleadings" and consider whether summary judgment-type evidence determines whether the plaintiff has a basis in fact for his or her claim. *Smallwood*, 352 F.3d at 223 n.8 (citing *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)); *see also Menendez*, 364 F. App'x at 69. In conducting this inquiry, the Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. So, too, must the Court resolve all contested issues of fact and all ambiguities of state law in favor of the party opposing removal. *See id.*; *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 813 (5th Cir. 2011).

## III. DISCUSSION

Whether remand is required turns on whether Brumfield "states a claim under state law" against Kamath, an in-state defendant.[15] *Menendez*, 364 F. App'x at 69. If the plaintiff does state a claim against Kamath under Louisiana law, Kamath is properly joined and remand is mandated, as complete diversity does not exist.

To examine whether the plaintiff maintains a claim against Kamath, the Court looks to the release Brumfield signed partially absolving Kamath of liability. In Louisiana, such a release is known as a *Gasquet* release, as it was authorized by the case *Gasquet v. Commercial Union Ins. Co.*, 391 So.2d 466 (La. App. 4 Cir. 1980). Under a *Gasquet* release, the plaintiff releases the defendant from liability except as necessary to pursue an action against the defendant's excess insurer. Such releases are generally done where, as here, the defendant has a primary insurer that pays the policy limits, and the plaintiff wishes to pursue a claim against any excess insurer. *See RSUI Indem. Co. v. Am. States Ins. Co.*, 127 F. Supp. 3d 649, 657-58 (E.D. La. 2015) (explaining the use of a *Gasquet* release). The release Brumfield signed with

---

[15] Plaintiff does not claim that Hemphill is properly joined or that her presence in the suit defeats diversity. Therefore, the Court does not reach this question and examines only the plaintiff's claim against Kamath.

both individual defendants specifically states that he reserves the following rights:

> to maintain insurance claims and a civil cause of action against Timothy Hemphill and Burde Kamath only to the extent legally required maintain Clark David Brumfield's full rights to pursue and prosecute any claims or civil actions against other insurance policies that may provide coverage to Timothy Hemphill and Burde Kamath.[16]

Although the plaintiff signed a limited release, he "retained a very real and specific claim against the tortfeasor," such that he could bring a claim against Kamath's excess insurer. *Durel v. Howard*, No. 13-cv-5991, 2013 WL 6499723, at *2 (E.D. La. Dec. 11, 2013). If Kamath had no excess insurer, or if the plaintiff had otherwise released or settled with the excess insurer, there would be no remaining basis for a claim against Kamath. But here, Kamath does have an excess insurer, and thus Brumfield can still "state a claim under state law" against both the tortfeasor and the excess insurer. *Menendez*, 364 F. App'x 62, 69. And although Kamath notified Brumfield of the claim after James River removed the case, Kamath was still liable under the *Gasquet* release at the time of removal, and Brumfield still held a claim against Kamath at that time. Even with a *Gasquet* release, a claim against Kamath is necessary for a claim against Allstate under Louisiana's Direct Action

---

[16] R. Doc. 15-2 at 4 (emphasis omitted).

statute. *See* La. R.S. 22:1269(B)(1). That statute provides that a plaintiff cannot bring a tort claim against an insurer unless he or she also brings a claim against the insured, except in limited circumstances not present here. *Id.*[17]

Because Louisiana law affords Brumfield a claim against Kamath notwithstanding the *Gasquet* release, Kamath has not been improperly joined. Indeed, James River does not seem to disagree. Rather, defendant argues that joinder was improper and remand unnecessary only if the plaintiff fully released Kamath and did not execute a *Gasquet* release.[18] Having reviewed the release at issue, that is not the case here, as Brumfield

---

[17] Louisiana courts have emphasized that an insurer's liability is based in the liability of the insured, who committed the tort. *See, e.g., Brown v. Unknown Driver*, 925 So.2d 583, 590 (La. App. 4 Cir. 2006); *Lucey v. Harris*, 490 So. 2d 416, 419 (La. App. 5 Cir. 1986). In *Soileau v. Smith True Value Rental*, 144 So.3d 771 (La. 2013), the Louisiana Supreme Court held for the first time that under the Direct Action Statute, a judgment may be entered against an insurer even if the insured party has been dismissed. *Id.* at 778-79. However, the Court there also held that an insured is a necessary party when, as here, an action was being *commenced* against the insurer. *Id.* The Louisiana Supreme Court also found it relevant to its holding that the insured and insurer had been codefendants for two years, and the insured defendant was dismissed at trial. *Id.* at 779 n.5. Here, where plaintiff first sued Allstate in June and before the litigation progressed significantly, the holding in *Soileau* does not render Kamath an unnecessary party at this point in the litigation.

[18] R. Doc. 9.

9

executed only a partial release.[19]  Therefore, because Kamath has been properly joined, complete diversity does not exist, and the case must be remanded to state court.

IV. **CONCLUSION**

For the foregoing reasons, the plaintiff's motion to remand is GRANTED.

New Orleans, Louisiana, this __13th__ day of September, 2019.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[19]  Other courts that have considered *Gasquet* releases have similarly found remand appropriate. *See Tipton v. Landen*, No. 6:15-cv-02811, 2016 WL 919539, at *5-6 (W.D. La. Mar. 8, 2016) (holding that the citizenship of a defendant-tortfeasor cannot be ignored for diversity purposes when the plaintiff sued both tortfeasors and their primary and excess insurers at the outset of the case, and then settled with the tortfeasors via a *Gasquet* release); *cf. Dural v. Howard*, No. 13-cv-5991, 2013 WL 6499723, at *2 (E.D. La. Dec. 11, 2013) (holding that although the contract at issue was not a proper *Gasquet* release, "[t]he circumstances of *Gasquet* likely would have precluded removal had it been attempted.")